IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CT-3296-FL

| | | |
|---|---|---|
| MR. JEFFREY GLEN McDUFFIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY and W. DAVID GUICE, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to amend (DE 32), defendants' motion for summary judgment (DE 34), plaintiff's motion for partial summary judgment (DE 38), and defendants' motion to strike (DE 66). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, this court denies defendants' motion to amend, grants defendants' motion to strike, grants defendants' motion for summary judgment, and denies plaintiff's motion for partial summary judgment.

**STATEMENT OF THE CASE**

On November 12, 2015, plaintiff, previously a state inmate, commenced this civil rights action, through counsel, pursuant to 42 U.S.C. § 1983, on the basis that his rights under Title II of the Americans with Disabilities Act ("ADA") of 1990, § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and the Fourteenth Amendment were violated by the North Carolina Department of Public Safety ("NCDPS") and W. David Guice ("Guice"), formerly the

Commissioner of the Division of Adult Corrections and Juvenile Justice (DAC), who was responsible for the operation and administration of all DAC facilities.[1] (See Compl. (DE 1) ¶¶ 6, 7).

Plaintiff claims that defendants excluded him from participating in sentence reduction credit programs, denied him the benefits of the sentence reduction credit programs, and subjected him to discrimination in the administration of the sentence reduction credit programs due to his disabilities. Plaintiff further claims that if he had not been subjected to this discrimination on the basis of his disability, he would have been released at least 20 months earlier than he was. Finally, plaintiff alleges that his due process rights were violated under the Fourteenth Amendment.

The case proceeded through discovery concluding January 17, 2017, pursuant to a case management order entered on April 6, 2016. On October 13, 2016, this court granted plaintiff's motion for a court-hosted settlement conference, and the case was designated for referral to United States Magistrate Judge Robert B. Jones, Jr., for settlement following the close of discovery and the court's ruling on dispositive motions.

On February 15, 2017, defendants filed the instant motion to amend their answer to assert the affirmative defense of failure to exhaust. Plaintiff filed a memorandum in opposition, and defendants filed an amended reply. On February 16, 2017, defendants filed the instant motion for summary judgment with an appendix to the statement of material facts that includes affidavits by NCDPS officials and defendant Guice.

Also on February 16, 2017, plaintiff filed the instant motion for partial summary judgment, requesting that this court grant his motion on the issue of liability under the ADA, the Rehabilitation

---

[1] Defendant Guice has been named solely in his official capacity. (See Compl. (DE 1) ¶ 7). Defendant Guice is now the "Chief Deputy Secretary." (See Defs.' Resp. Pl.'s Mat. Facts (DE 57) at 2 n.1).

Act, and § 1983, and schedule a hearing to address the issue of his damages. (See Pl.'s Mot. Part. Summ. J. (DE 38) at 2). Plaintiff's motion is supported by the following: plaintiff's affidavit (DE 41-1), plaintiff's offender report (DE 41-2), North Carolina's Early Release Credit Policies (DE 41-3), defendant NCDPS Health Services Policy A-9 (DE 41-4), plaintiff's prison medical records (DE 41-5), plaintiff's 2013 ADA evaluations (DE 41-6), plaintiff's prison medical evaluation records (Utilization Review Board) (DE 41-7), plaintiff's case management notes (DE 41-8), defendant NCDPS's case management policy (DE 41-9), defendant NCDPS's memo regarding Bumgarner, et al. v. N.C. Dept. of Correction, No. 5:10-CT-3166-BO (E.D.N.C) (DE 41-10), Bumgarner Consent Decree (41-11), plaintiff's DC-746 IRAR forms (DE 41-12), plaintiff's activity history and sentence credits (DE 41-13), defendants' answers to plaintiff's first interrogatories (DE 41-14), and defendants' supplemental answers to plaintiff's first interrogatories (DE 41-15).

Defendants filed a memorandum in opposition to plaintiff's motion for partial summary judgment, and plaintiff filed a reply. On April 13, 2017, defendants filed the instant unopposed motion to strike plaintiff's supplements (DE 63, 64).

## STATEMENT OF THE FACTS

Except as otherwise noted below, the undisputed facts are as follows: plaintiff, a resident of Bladen County, North Carolina, was an inmate in the custody of DAC from January 26, 1999 to January 15, 2014. (See Offender Printout (DE 35-3); Ellington Aff. (DE 37-6) ¶ 45; Compl. (DE 1) ¶¶ 4, 9).

In North Carolina, state inmates who meet certain requirements are permitted to work toward an early release pursuant to a formula. (See Compl. (DE 1) ¶ 12). Plaintiff received 297 days of earned time credit, 12 days of meritorious time credit, 60 days of restored earned time credit, and

3

83 days of pretrial confinement or jail credit. (See Tharrington Aff. (DE 37-3) ¶ 21, Exs. 4-6). The latest release date designated for plaintiff's sentence was July 28, 2015. (See id. ¶ 21, Exs. 4-6).

Plaintiff worked toward earning early release credits for approximately two years when he was taken out of work pursuant to a doctor's orders. (See Compl. (DE 1) ¶ 13). After learning that he was not earning time because his disabilities took him out of work, plaintiff requested that he be allowed to participate in programs to earn an early release. (See id. ¶ 14). Plaintiff was advised by "prison officials" that he was not permitted to participate "in early release programs because he was a liability due to his disabilities." (Id. ¶ 15).

Plaintiff suffers with a number of physical and mental limitations. (See Compl. (DE 1) ¶ 5). In particular, plaintiff suffered a broken neck and has a 4" Titanium plate in his neck and six screws that "hold his neck together." (Id.) Plaintiff has undergone four failed reconstructive surgeries on his right knee. (See id.) Plaintiff has also undergone ankle surgery and hip surgery. (See id.) Plaintiff has limited ambulatory mobility, and he has lost 15% of the range of motion in his neck. (See id.) Plaintiff previously broke his tail bone, and he has degenerative disc complications. (See id.) Plaintiff suffered from scoliosis in his youth, which contributes to his current issues. (See id.) Plaintiff endures almost constant pain that is aggravated by physical activity. (See id.) Plaintiff also suffers from psychiatric disorders, including attention deficit disorder, adjustment disorder, anxiety disorder, and post-traumatic stress disorder. (See id.)

On or about September 17, 2010, North Carolina Prisoner Legal Services ("NCPLS"), a non-profit organization that provides legal services to North Carolina prison inmates, filed a class-action lawsuit alleging that DAC's refusal to permit disabled inmates to have the opportunity to earn

4

sentence reduction credits violated the Rehabilitation Act and the ADA. (See id. ¶ 18, 19 (citing Bumgarner).

On May 13, 2013, George T. Solomon ("Solomon"), Director of Prisons, sent out a Memorandum to advise prison facility management about the pending settlement agreement in Bumgarner. (See Solomon Aff. (DE 37-4) ¶ 3, 9, Ex. 1; Pl.'s App. (DE 41-10); Memorandum (DE 46)). According to the proposed settlement, disabled inmates (class members) could get back gain time they had been denied in the past. (See Solomon Aff. (DE 37-4) ¶ 12). DAC would use a review process to determine if class members were eligible to get gain time that they had been denied due to disability. (See id.) The process required inmates to follow the steps addressed in the Notice to be considered for a review and possible correction of the inmate's projected release date. (See id.)

DAC facilities were required to post notice of the pending settlement in Bumgarner from May 20, 2013 through July 1, 2013. (See Solomon Aff. (DE 37-4) ¶ 11, Ex. 2). On May 20, 2013, a Notice was placed on all prison housing area bulletin boards and other places where inmates received information. (See id. ¶ 10, Ex. 2).

Bumgarner class members had until July 1, 2013 to file any objections to the proposed settlement agreement. (See id. ¶ 16). On August 15, 2013, the parties in Bumgarner entered into a Consent Decree that resolved all issues raised in the complaint in that case. (See Compl. (DE 1) ¶ 19) (citing Bumgarner, No. 5:10-CT-3166-BO (E.D.N.C. Aug. 15, 2013)) at (DE 123); Bumgarner Consent Decree (DE 41-11); Solomon Aff. (DE 37-4) ¶18). The Consent Decree required DAC to evaluate the situation of class members to determine if they were entitled to retroactive sentence credits going back as far as September 17, 2007, based on disability discrimination. (See Compl.

5

(DE 1) ¶ 21; Bumgarner Consent Decree (DE 41-11) ¶ 8(b)). Defendants represent that Health Services/Mental Health Services was responsible for handling the evaluation and determination of whether an inmate was eligible for retroactive sentence credit under Bumgarner. (See Solomon Aff. (DE 37-4) ¶ 19; defendant Guice's Aff. (DE 37-7) ¶ 8).

The Consent Decree provided that class members, which was made up of disabled inmates, could get back certain qualifying time they had been denied time in the past. (See Solomon Aff. (DE 37-4) ¶ 12; Carter Aff. (DE 37-5) ¶ 13; Ellington Aff. (DE 37-6) ¶ 19). DAC would use a review process to determine if class members were eligible to receive time they had previously been denied. (See Solomon Aff. (DE 37-4) ¶ 12; Carter Aff. (DE 37-5) ¶ 13; Ellington Aff. (DE 37-6) ¶ 19). The review process required each inmate to follow steps described in the Notices so as to be considered for review and potential correction of their projected release date. (See Solomon Aff. (DE 37-4) ¶ 12; Carter Aff. (DE 37-5) ¶ 13; Ellington Aff. (DE 37-6) ¶ 19). An inmate was not automatically entitled to retroactive sentence credit because he had a "qualified" disability. (See Carter Aff. (DE 37-5) ¶ 21; Ellington Aff. (DE 37-6) ¶ 36).

To be eligible for retroactive sentence credits under the Bumgarner Consent Decree, plaintiff must have submitted, on or before August 15, 2013, either (1) a DC-746 Inmate Reasonable Accommodation Request ("IRAR"); or (2) a DC-410 grievance, seeking sentence credits for the time period of September 17, 2010 through the date the Consent Decree was approved, August 15, 2013, (See Solomon Aff. (DE 37-4) ¶ 13; Bumgarner Consent Decree (DE 41-11)). Then, plaintiff's request had to be formally denied. (See Solomon Aff. (DE 37-4) ¶ 13; Bumgarner Consent Decree (DE 41-11)). In addition, plaintiff had to turn in second form, an IRAR, within 30 days of the Notice being posted in prisoners' housing by DAC, which occurred on May 20, 2013. (See Solomon

6

Aff. (DE 37-4) ¶ 14; Bumgarner Consent Decree (DE 41-11)). This second form had to specifically reference the previous formal denial of sentence reduction credits due to disability. (See Solomon Aff. (DE 37-4) ¶ 15; Bumgarner Consent Decree (DE 41-11)). The requirements of the Consent Decree terminated on August 15, 2015. (See Consent Decree (DE 41-11)).

On March 19, 2013, plaintiff completed a DC-746 IRAR (see Ellington Aff. (DE 37-6) ¶ 20, Ex. 2), in which he stated, "I have been denied sentence reduction credits due to my disability since October of 2001" (see id. Ex. 2; Pl.'s App. (DE 41-12)).[2] Prior to any determination on the March 19, 2013, request, plaintiff completed a second IRAR form on May 21, 2013. (See Ellington Aff. (DE 37-6) ¶ 24, Ex. 4). In the second form, plaintiff stated, "I have been denied gain time by reason of disabilities. Previously, on [March 19, 2013], I filed an IRAR DC-746 about the same issue." (See id. Ex. 4). Plaintiff again acknowledged awareness that if he did not agree with the determination he could submit a grievance. (See id.) Plaintiff did not, and could not, reference a previous formal denial of his March 19, 2013, IRAR because there had not been a determination when he filed his May 21, 2013, IRAR. (See id. ¶ 24, Ex. 4).

The submission of the IRAR form by an inmate triggers the evaluation for whether he is entitled to an award for medically unfit gain/earned time. (See Ellington (DE 37-6) ¶ 26). On June 10, 2013, plaintiff was evaluated using the criteria applicable to persons under the ADA, and it was determined that he was a "qualified person with a disability" with "significant" "permanent/lifelong"

---

[2] As part of his March 19, 2013 form, plaintiff acknowledged as follows:

> I request reasonable accommodation due to my impairment. I understand that this is only a request, which will begin the inquiry into whether or not I am entitled to receive a reasonable accommodation. I also understand that my housing may not be affected while my request is under consideration. I will be within my rights to file a grievance through the inmate grievance process should I not agree with the determination made regarding this request.

(Ellington Aff. (DE 37-6) ¶ 21, Ex. 2, Pl.'s App. (DE 41-12)).

7

limitations. (See Compl. (DE 1) ¶ 20; ADA Evaluations (DE 43) at 5-6; Ellington Aff. (DE 37-6) ¶ 28). Plaintiff was evaluated to determine if he qualified for the job, program, activity, or service by the Mental Health Social Worker and the Disability Case Manager. (See Ellington Aff. (DE 37-6) ¶ 29). Plaintiff was then evaluated to determine if he qualified for retroactive gain/earned time under the Bumgarner Consent Decree. (Id. ¶ 31).

On July 10, 2013, an email was sent by Lynn N. Sanders, ADA Liason with NCDPS, which sought the grievances filed by plaintiff from September 10, 2010 through May 13, 2013. (See Carter Aff. (DE 37-5) ¶ 24, Ex. 2). The response revealed plaintiff did not have any grievances in which he requested sentence credits based on a disability while he was incarcerated. (See id. ¶¶ 25-26, Ex. 3).

On November 3, 2013, plaintiff was served with an IRAR Determination Form, which advised him of the determination of his request for accommodation, and that he had the right to file a grievance if he disagreed with the determination. (See Ellington Aff. (DE 37-6) ¶¶ 39-40, Ex. 9). On November 10, 2013, DAC issued a memorandum that stated plaintiff had been evaluated for and denied "retroactive sentence credits" because in order to be entitled to retroactive sentence credit under the Consent Decree, he was required to have submitted a form acknowledging that he filed and received a previous formal denial of sentence credits. (See Compl. (DE 1) ¶ 22; Ellington Aff. (DE 37-6) ¶ 38).

Defendant NCDPS has a three-step Administrative Remedy Procedure ("ARP") that governs submission and review of inmate grievances. (See McMichael Aff. (DE 37-2) ¶¶ 9; Ellington Aff. (DE 37-6) ¶ 43). Under the ARP, the North Carolina Grievance Resolution Board's review is the final step, Step Three, and it constitutes exhaustion of the administrative remedy process. (See

8

McMichael Aff. (DE 37-2) ¶ 10; Ellington Aff. (DE 37-6) ¶ 43). An inmate has not fully exhausted his administrative remedies until Step Three is complete. (See Ellington Aff. (DE 37-6) ¶ 43).

According to both DAC records and computer database, plaintiff filed only one grievance while incarcerated. (See McMichael Aff. (DE 37-2) ¶¶ 11-13, Ex. 3). The grievance, filed on December 18, 2003, was based on plaintiff's complaints that he was being denied medical care at Harnett Correctional Institution. (See id. ¶ 13, Ex. 3).

On January 15, 2014, plaintiff was released from prison, having earned 297 days of earned time credit and 60 days of restored earned time credit. (See id. ¶ 4; Tharrington Aff. (DE 37-3) ¶¶ 19, 21, Exs. 4-6). Plaintiff completed post-release supervision on October 12, 2014. (See Tharrington Aff. (DE 37-3) ¶ 21; Ellington Aff. (DE 37-6) ¶ 46).

## DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry

of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

1.  Defendants' Motion to Amend

Defendants seek to amend their answer to assert the affirmative defense of failure to exhaust administrative remedies as a bar to plaintiff's suit under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Defendants argue that it was not until February 10, 2017 that they became aware plaintiff had no evidence to show he had exhausted his administrative remedies. Defendants conclude that plaintiff will not be prejudiced if their motion to amend is granted.

Leave to amend "shall be freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). The liberal rule gives effect to the policy in favor of resolving cases on the merits rather than mere technicalities. See Foman v. Davis, 371 U.S. 178, 182 (1962); Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Under Federal Rule of Civil Procedure 15(a), leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Laber, 438 F.3d at 426.

Here, amendment of the answer to add a PLRA exhaustion defense is futile because the PLRA exhaustion requirement does not apply to plaintiff's case. Plaintiff was released from prison on January 15, 2014. (See Compl. (DE 1) ¶ 4; Ellington Aff. (DE 37-6) ¶ 45). Plaintiff's complaint was filed in this court on November 12, 2015. (See id.) Thus, plaintiff was not required to exhaust his administrative remedies for purposes of PLRA. See Cofield v. Bowser, 247 F. App'x 413, 414 (4th Cir. 2007) (holding that (1) the exhaustion requirement under the PLRA does not apply to a former prisoner; and (2) it is a plaintiff's status at the time he filed the lawsuit that is determinative); Norton v. The City of Marietta, OK, 432 F.3d 1145, 1150 (10th Cir. 2005) ("In light of the PLRA's plain language, the other circuits to have addressed the issue have unanimously held that it is the

plaintiff's status at the time he files suits that determines whether § 1997e(a)'s exhaustion provision applies."); Dixon v. Page, 291 F.3d 485, 489 (7th Cir. 2002) ("[P]laintiff's status as a 'prisoner' is to be determined as of the time he brought the lawsuit."); see also Dalenko v. Stephens, No. 5:12-CV-122-F, 2014 WL 794045, at *5 (E.D.N.C. Feb. 27, 2014) (following the Fourth Circuit's decision in Cofield); Shembo v. Bailey, No. 3:07CV543-RJC, 2009 WL 129974, at *2 (W.D.N.C. Jan. 20, 2009) (same).

In sum, because amendment of defendants' answer would be futile, defendants' motion to amend must be DENIED.

2. Defendants' Motion to Strike

Defendants move pursuant to Federal Rule of Civil Procedure 12(f) to strike plaintiff's supplement to statement of facts (DE 63) and appendix to supplement to statement of material facts in support of motion for partial summary judgment (DE 64). (See Mot. Strike (DE 66) at 1). According to defendants, the supplements (DE 63, 64) are "superfluous documents" that are not provided for in the Federal Rules of Civil Procedure or this court's Local Rules. (See id.)

Under Rule 12(f), a district court may, on motion of a party or on its own initiative, strike from a pleading an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc., v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quotation omitted). Therefore, "motions to strike are rather strictly considered and have often been denied even when literally within the provisions of Rule 12(f) where there is no showing

of prejudicial harm to the moving party." Godfredson v. JBC Legal Group, P.C., 387 F.Supp. 2d 543, 547-48 (E.D.N.C. 2005) (quotation and alteration omitted).

In this case, plaintiff failed to oppose defendants' motion to strike. Moreover, plaintiff did not seek leave of court prior to filing these supplements that are not provided for in the Federal Rules of Civil Procedure or this court's Local Rules. Finally, plaintiff's motion for partial summary judgment was filed on February 16, 2017, and the supplements were filed almost two months later. Thus, defendants were essentially precluded from responding in opposition. For all these reasons, defendants' motion to strike is GRANTED. The clerk is DIRECTED to strike (DE 63, 64) from the court's docket.

3. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the following grounds: 1) plaintiff failed to exhaust his administrative remedies against defendants; 2) plaintiff cannot establish that he was excluded from participation in or otherwise discriminated against from receiving retroactive sentence credits based on his alleged qualified disability; and 3) defendants are entitled to Eleventh Amendment immunity and sovereign immunity in their official capacities. Defendants conclude that summary judgment should be granted in their favor and all of plaintiff's claims dismissed because he has not and cannot present sufficient evidence to permit reasonable jurors to find in his favor.

a. Failure to Exhaust

Defendants initially argue that plaintiff's claims must be dismissed because he failed to exhaust his administrative remedies prior to filing this lawsuit under the PLRA. As discussed above, defendants' PLRA exhaustion argument is without merit. However, the court addresses further herein the issue of exhaustion as it applies to plaintiff's claims on the merits.

13

In sum, because plaintiff was not in custody at the time he initiated this action, he was not required to exhaust his administrative remedies under the PLRA. Therefore, defendants' motion for summary judgment on this basis must be denied.

      b.      Discrimination

With respect to plaintiff's ADA and Rehabilitation claims, defendants contend that the record establishes as a matter of law that they did not exclude or deny retroactive sentence credits to plaintiff on the basis of his disability.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Due to the similar statutory language in the ADA and Rehabilitation Act, they are construed to impose the same requirements. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 n.17 (4th Cir. 2005). Moreover, the ADA and the Rehabilitation Act apply to state prisons. See Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998) (noting that the ADA applies to state prisons); Spencer v. Earley, 278 F. App'x 254, 259 (4th Cir. 2008) (applying the ADA and the Rehabilitation Act to a state prisoner).

A plaintiff seeking recovery for a violation of either the ADA or the Rehabilitation Act must show that: (1) he has a disability; (2) he is otherwise qualified to receive benefits of a public service,

14

program, or activity; and (3) he was excluded from participation in or denied the benefits of such service, on the basis of his disability. Constantine, 411 F.3d at 498. Under the third step, with respect to the ADA, a plaintiff must show that disability "played a motivating role" in the adverse action, and under the Rehabilitation Act, a plaintiff must show that any adverse action was taken "solely by reason" of his disability. Id. n.17 (quoting and citing Baird v. Rose, 192 F.3d 462, 469-70 (4th Cir. 1999)).

Defendant NCDPS has a policy that is entitled "Sentence Reduction Credits," which is found at Chapter B § 0.0100, et seq. (See App. (DE 41-3)). From 1998 to 2001, that policy did not mention or otherwise provide for disabled inmates who were unable to work or participate in programs for sentence reduction credits based on a physical or mental inability. (See id. at 1-8).

On January 31, 2003, the policy added § 0.0116, which was entitled "Earned Time Credit For Medically And Physically Unfit Inmates." (See id. at 15-16). At that point in time, only the "medically unfit," were allowed to earn disability-related sentencing credit. (Id.) "Medically unfit" inmates could earn four days per months of sentence credit, and the able-bodied inmates could earn up to six days per month of sentence credit. (See id. at 15). Moreover, "medically unfit" referred to those inmates who were designated as "Acuity Level IV." (Id.) "Acuity Level IV" refers to those inmates in the worst condition, such as in intensive care, Hospice, or on a ventilator. (See App. (DE 41-4) Ex. D at 8-9).

On August 25, 2003, the policy was amended to broaden the definition for "medically unfit" to encompass "Acuity Level IV, PULHEAT Activity Grade IV or V and Mental Health Grade IV." (Id. at 32). "PULHEAT" is an acronym for the measurement of physical capabilities: Physical Capability, Upper Extremities, Lower Extremities, Hearing, Eyes, Activity, Transportation.

15

"Activity" is graded on a scale of 1 to 5. (Pl.'s Ex. E (DE 42) at 1). Grade 1 means an inmate can engage in unrestricted activity, any work. (Id.) Grade 2 means that the inmate has minor restrictions. (Id.) Grade 3 means that the inmate can engage in activity within "reasonable limits." (Id.) Grade 4 means that the inmate has strict limits on activities. (Id.) Grade 5 means that the inmate can engage in "no activities or work." (Id.) On May 31, 2011, the definition of "medically unfit" was expanded again so that it included Acuity Level III. (Id. at 74-75).

Defendants argue that plaintiff cannot show that they discriminated against him or denied him retroactive sentence reduction credits on the basis of his alleged disability. (See Mem. Supp. (DE 35) 23-26). This court agrees.

Plaintiff has failed to raise a genuine issue of material fact on the issue of whether plaintiff's disability "played a motivating role" in the decision to deny him sentence credits or whether the decision was "solely by reason" of his disability. See e.g., Miller v. Hinton, 288 F. App'x 901, 903 (4th Cir. 2008) (holding that "[i]nsofar as [plaintiff] may be claiming that the institution denied him proper medical care . . . [plaintiff] has failed to show he was treated in this manner because of his disability."); Spencer v. Easter, 109 F. App'x 571, 573 (4th Cir. 2004) (holding that plaintiff failed to establish a prima facie ADA case because there was no evidence to suggest that any failure by defendants stemmed from any discriminatory intent "due to any alleged disability"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA is not "violated by a prison simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; [plaintiff] was not treated worse because he was disabled.").

As the record reflects, plaintiff filed his first IRAR on March 19, 2013, and <u>before</u> there was a formal denial, he filed his second IRAR on May 21, 2013. (See IRAR forms (DE 47). The second

IRAR did not reference any formal denial of the first IRAR. (See id.) Plaintiff was denied retroactive sentence credits because his second IRAR did not, and could not, refer to any formal denial of sentence credits on the basis of disability. (See Ellington Aff. (DE 37-6) ¶ 38). Thus, plaintiff's denial under the process set forth in Bumgarner was based on a failure to follow the designated procedure, not because of his disability. It is not a violation of the ADA to deny an inmate's request for reasonable accommodation because of a reason other than his disability.

Following the denial, plaintiff had the ability to appeal the decision through the ARP process. As noted, plaintiff did not file a grievance on this issue. In fact, plaintiff did not dispute the decision until the Bumgarner Consent Decree ceased to be enforceable and he had been released from prison.

To the extent that plaintiff is attempting to bring a claim separate and apart from Bumgarner, (see Bumgarner Consent Decree (DE 41-11) ¶ 3), plaintiff does not point this court to any pre-2013 evidence supporting a claim for relief. (See Pl.'s Mem. Supp. (DE 39) at 8). In fact, the record contains material pre-2013 evidence to the contrary. (See, e.g., McDuffie Case Management Notes (DE 45), May 27, 2008 (noting that plaintiff was encouraged to get a unit job but refused); July 30, 2008 (noting that plaintiff was encouraged to find a job and showed very little interest in doing so)).

In sum, defendants have established there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law. Therefore, defendants' motion for summary judgment on plaintiff's ADA and Rehabilitation Act claims is GRANTED.

      c.      Due Process

Plaintiff claims defendants violated his right to due process by failing to properly process his reasonable accommodation requests according to the Bumgarner Consent Decree. (See Pl.'s Mot. Part. Summ. J. (DE 39) at 9). In particular, plaintiff contends that the undisputed evidence

establishes that he was a member of the class contemplated in Bumgarner and its Consent Decree, and that he properly filed IRAR DC-729 forms on March 19, 2013 and May 21, 2013 (referencing the May 19, 2013 form) complaining that he had been denied sentence reduction credits based on his disabilities. (Id.) Plaintiff concludes that with his timely filing of those forms prior to the court's acceptance of the Consent Decree, he qualified for early release credits under the Consent Decree. (Id.) Defendants reiterate their argument regarding plaintiff's failure to exhaust the required remedies.

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; accord Meachum v. Fano, 427 U.S. 215, 223 (1976). In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

In order to demonstrate a liberty interest meriting procedural due process protections, an inmate must show: "(1) denial of an interest that can arise either from the Constitution itself or from state laws or policies," and (2) "this denial imposed on him an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Prieto v. Clarke, 780 F.3d 245, 251 (4th Cir. 2015) (internal quotations omitted).

In this case, following the November 3, 2013, determination, plaintiff had the ability to appeal the decision through the ARP process, but he did not file a grievance. (See McMichael Aff. (DE 37-2) ¶¶ 11-3; Ellington Aff. (DE 37-6) ¶¶ 39-40, Ex. 9). In fact, plaintiff did not dispute the decision until after the Consent Decree was no longer enforceable and he was released from prison.

18

In sum, defendants have established there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Consequently, defendants are entitled to summary judgment on plaintiff's due process claim.

4. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on the basis that there are no genuine issues of material fact, and that he is entitled to summary judgment as a matter of law on the issues of defendants' liability. As noted, defendants have established that there are no genuine issues of material fact, and they are entitled to summary judgment as a matter of law on each of plaintiff's claims. Therefore, plaintiff's motion for partial summary judgment is DENIED as moot.

## CONCLUSION

For the foregoing reasons, this court ORDERS as follows:

1) Defendants' motion to amend is (DE 32) is DENIED;

2) Defendants' motion to strike (DE 66) is GRANTED, and the clerk is DIRECTED to strike (DE 63, 64) from this court's docket;

3) Defendants' motion for summary judgment (DE 34) is GRANTED;

4) Plaintiff's motion for partial summary judgment (DE 38) is DENIED; and

5) The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of September, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge